NEIL S. BROWN, Trustee, etc., *vs.* HENRY S. FOOTE and others.

## April Term, 1875.

SETTLEMENT UPON A MARRIED WOMAN OF HER OWN REALTY BY DECREE OF COURT.—Where lands owned absolutely by a married woman are, by decree of the court, with her consent, settled to her sole and separate use, without any power of disposition except by order of the court, the lands become again subject to her absolute disposition upon the death of her husband, and a subsequent conveyance thereof to a trustee, upon new trusts, by her in anticipation of a second marriage afterwards consummated, would be good; and the lands, during the second coverture, would be subject to the provisions of the new settlement.

MARRIAGE SETTLEMENT—POWER OF DISPOSITION.—Where a marriage settlement of lands in trust to the separate use of a married woman provided

that the trustee should convey the lands, "or any part of the same," in any manner the married woman "may direct by will, or deed, or writing under her hand," and in case she makes no such direction, then to and for the use of the heirs of the married woman in fee, it was held that the power of disposition was not limited to the death of the *feme*, but that the trustee might, under her direction, in the mode prescribed, sell any part of the property, and use the proceeds, if necessary, for her support.

*Neil S. Brown*, for complainant.

*H. S. Foote*, for defendants.

The Chancellor :—John Boyd, by last will, devised his lands to his wife and children equally, the devisees to hold said lands in fee, "without any restrictions, limitations, or conditions whatever." The share of his daughter, Rachel D., now the defendant Rachel D. Foote, in said lands was estimated at about $19,000, and her share of personalty under the will at about $16,000. The said Rachel D. intermarried with one Robert G. Smiley, and filed her bill, by next friend, against her husband and her guardian, praying that a reasonable settlement be made upon her out of said estate, and especially that her interest and share in said lands be settled on her to her sole and separate use. The husband answered, admitting the facts, and submitting to the settlement "as the court might decree in that behalf." Such proceedings were had in the cause that, on the 6th of January, 1849, a final decree was rendered by the supreme court giving the personalty to the husband, and settling the realty on the wife, "to her sole and separate use, free from the debts and control of her said husband, said Robert G. Smiley, and that the rents, issues, and profits of said share of said Rachel D. in said real estate be paid to her, on her order in writing, witnessed by two witnesses, and not otherwise, to her sole and separate use, free from the debts or control of her said husband. But it is not intended by this decree to render said estate unalienable, if it should be necessary for a proper partition, or if it should be for the interest of the said Rachel D. that the same should be sold, and the chancery court, or other court having jurisdiction of said matters, shall decree a sale of said

real estate. The proceeds of said sale shall be invested and settled on said Rachel D., to her sole and separate use, free from the debts and control of the said Robert G. Smiley, and the rents, issues, and profits of said proceeds of sale so invested and settled shall be paid to her, on the order in writing of said Rachel D., witnessed as aforesaid, and not otherwise, for her sole and separate use, free from the debts and control of her said husband, said Robert G. Smiley. It is further ordered, adjudged, and decreed that the right and power of disposing of said real estate of said Rachel D., or of the proceeds of the sales thereof, by last will and testament so executed as to pass real estate, be, and is hereby, reserved and vested in said Rachel. D. Smiley, and if the said Rachel D. should die without disposing of her said share or interest in said real estate, or the proceeds of sale thereof, by last will and testament so executed as to pass real estate, and the said Robert G. Smiley should have issue by her born alive, so as to entitle him to an estate by courtesy, his right to such estate shall not be defeated or affected by this decree, and he may hold and enjoy the same.''

Robert G. Smiley afterwards died, and Rachel D. intermarried with the defendant Henry S. Foote. In view of this marriage, on the 13th of June, 1859, a deed of marriage settlement was executed by the said Henry S. Foote of the one part, the said Rachel D. Smiley of the second part, and John O. Ewing of the third part, reciting '' that, whereas, a marriage between the said Henry S. and the said Rachel D. is contemplated shortly to take place, and it is agreed between the said Henry S. and Rachel D. that, notwithstanding said marriage, she shall remain seized and possessed of her estate, with the same powers of disposition and separate enjoyment as she now possesses in regard to the same ;'' now, therefore, in consideration of the premises, '' she, the said Rachel D. Smiley, has bargained, sold, and conveyed, and by these presents does bargain, sell, and convey to the said John O. Ewing,'' his heirs, successors, etc.,

17

said lands, for the following purposes, uses, and trusts—that is to say:

1st. That, until the said marriage takes effect, the said trustee will convey said property as said Rachel D. may direct, or hold the same for her use, or the uses of her last will, or to such uses as she may by deed, will, or verbally appoint.

2d. That, after said marriage shall take place, said trustee will hold said property for her sole and separate use, free from the debts or control of the said Henry S., and allow her to possess the same, and receive the rents, issues, and profits thereof to her own separate use.

3d. That said trustee will convey the same, or any part of the same, in any manner she, the said Rachel D., may direct by will, or deed, or by any writing under her hand; and, in case she makes no such direction, then to and for the use of the heirs of the said Rachel D., in fee.

4th. That, in case she survives the said Henry S., then said trustee shall hold said property for the use of the said Rachel D., and shall convey the same to her as of her former estate.

Sales of this realty becoming indispensable for the support of the said Rachel D. Foote, after her marriage, John O. Ewing, the original trustee, under the advice of counsel, and complainant as his successor, being himself a distinguished lawyer, proceeded to sell, from time to time, portions of the real estate of the said Rachel D., in compliance with her written request, and made conveyances to the purchasers, permitting the said Rachel D. always to receive, for her own disposition and use, the proceeds of said sale. After the death of Robert G. Smiley, and before her intermarriage with the said Henry S. Foote, the defendant Rachel D. had herself sold and conveyed portions of the land in fee, and received the proceeds of sale. The lands so sold as aforesaid have been built upon by the purchasers, or those who claim under them, and otherwise improved. Recently some doubts have been suggested as to the validity of these several sales, to the annoyance of the present holders, and

greatly to the prejudice of Mrs. Foote by throwing a cloud over her right to sell, and preventing her from making sales absolutely essential to her support. The bill is filed for a construction of the rights of the said Rachel D., and of her powers and those of her trustee in the disposition of said lands, and for special instructions to the latter in the discharge of his duties.

The interest of the defendant Rachel D. in the lands given to her by her father's will was absolute, " without any restrictions, limitations, or conditions whatever." The settlement applied for by her was with a view to a limitation on the rights of the husband, rather than on the powers of the wife. And the language of the decree seems cautiously to limit the restrictions to the existing marriage, by repeating over and over again the phrase, " free from the debts and control of her said husband," or " of said Robert G. Smiley." Whether the separate use shall be confined to the particular marriage, or continue through as many marriages as the woman may enter into, is wholly a question of intention. If the settlement be made by a third person the separate use will attach as often as she may marry, where the property is clearly settled to the separate use of the woman. *Beaufort* v. *Collier*, 6 Humph. 487; Perry on Trusts, § 653. Where the settlement is voluntarily made by the wife, or at her instance, there would be less reason to stretch the restriction beyond the marriage which gave rise to the settlement. There is strong force, therefore, in the suggestion in this case that the separate estate was intended to continue only during the existing marriage, and not to again go into effect upon a second marriage. It is not necessary, as will be seen, to decide this point in the present case, but I am inclined to limit the separate estate to the first marriage. *Rogers* v. *White*, 1 Sneed, 68, 73; *Benson* v. *Benson*, 6 Sim. 126; *Tullett* v. *Armstrong*, 1 Beav. 27. But see *In re Gaffee*, 1 Mac. & G. 541.

At law it is an elementary principle that an estate in

fee carries with it, as an incident, an unlimited power of disposition, which cannot be restrained or taken away by any clause or proviso in the instrument conveying the estate. Such a proviso is void. Lit. § 360; Co. Lit. 223, a; Bouv. Inst. § 1698; *Smith, T.* v. *Bell*, M. & Y. 302; *Dick* v. *Pitchford*, 1 Dev. & B. Eq. 486. The same principle has always been recognized in equity, being distinctly brought into view in gifts to men in *Brandon* v. *Robinson*, 18 Ves. 429. The question speedily arose whether the same rule applied in similar gifts to females, and, in 1815, Sir William Grant held, in *Jones* v. *Salter*, 2 Russ. & M. 208, that it did. He decided that property settled upon a married woman, with a clause against anticipation, was, upon her becoming discovert by the death of her husband, absolutely disposable by her. This ruling was followed by Sir Thomas Plumer, in *Barton* v. *Briscoe*, 1 Jac. 603, and by the Lord Chancellor in *Woodmeston* v. *Walker*, 2 Russ. & M. 197, and *Brown* v. *Pocock*, id. 210. The case of *Tullett* v. *Armstrong*, decided by Lord Langdale, as master of the rolls, 1 Beav. 1, and affirmed by Lord Cottenham, 4 Myl. & Cr. 377, was more particularly directed to the point that the estate to the separate use of a woman attaches upon subsequent coverture, but concedes that while discovert the power of alienation is not thereby affected. The following language of the master of the rolls in that case is quoted by our supreme court, and approved, in *Beaufort* v. *Collier*, 6 Humph. 492: " Whether the gift to her separate use be made with or without the power of alienation, the restraint is annexed to the separate estate, and the separate estate has its existence only during coverture; while the woman is discovert the separate estate, whether modified by restraint or not, is suspended and has no operation, though it is capable of arising upon the happening of a marriage." To the same effect is *Pooley* v. *Webb*, 3 Coldw. 599. And see *Tucker's Appeal*, 75 Penn. St. 354, and *Russell's Appeal*, id. 269.

There seems to be no conflict in the authorities upon this

point, and Mr. Perry lays it down as law, for which he cites a number of cases, that property conveyed to a married woman, to her sole and separate use, becomes absolutely hers, and may be sold by her as soon as her husband dies, or creditors may seize it for her debts. *A fortiori*, I take it, if the settlement to the sole and separate use be at the instance of the wife, and under such circumstances and in such terms as fairly to imply that the restriction was with a view to an existing marriage only.

In this view the defendant Rachael D. had the undoubted right, while the widow of her first husband, to sell and dispose of the lands in question, by sale or otherwise, as she might see proper. She had the unlimited power of disposition, as incident to the fee vested in her by her father's will, and was in no way hampered except during coverture by her voluntary act. She had the right, therefore, to make the deed to John O. Ewing, and Ewing took the absolute fee, subject only to the uses and trusts therein specified. In other words, the marriage settlement was as valid and effective, to all intents and purposes, as if the decree of the supreme court of the 6th of January, 1849, had never been rendered. The absolute estate vested in her by her father's will revived upon the death of her husband, so as to render any deed made while discovert as good as if made previous to her first marriage. And this although, if no such deed had been made, it might be held that the estate to her sole and separate use would revive upon her second coverture, under *Tullett.* v. *Armstrong* and other cases.

By the marriage settlement between the defendants, and the conveyance to John O. Ewing, the trustee held the lands in controversy to the sole and separate use of the defendant Rachel D., and in trust to allow her to receive the rents, issues, and profits to such use. It provides, further, that the trustee " will convey the said lands, or any part of the same, in any manner she, the said Rachel D., may direct by will, or deed, or by any writing under her

hand." The provision is, not only for the contingency of death, in which event she is given the power to direct how the property shall go, but for the disposition of the *corpus* of the property during life. For the words "any part of the same" and "by any writing under her hand" manifestly contemplate a sale of parcels from time to time, and by informal instruments, to meet exigencies. There are no words limiting the power to convey thus given to the period of the death of the beneficiary, or after her death in accordance with her wishes expressed in one of the modes designated, as in *Ware* v. *Sharp*, 1 Swan, 495; *Starnes* v. *Allison*, 2 Head, 221; and *Head* v. *Temple*, 4 Heisk. 34. On the contrary, the draftsman clearly intended, in one paragraph, to provide for the disposition by the beneficiary of parts of the property during life, and of any surplus after death, as in *Sherman* v. *Turpin*, 7 Coldw. 382. The settlement is by the absolute owner in her own favor, with power of disposition by deed or will during the anticipated coverture, with a reconveyance to her thereafter as of her former estate. It is precisely the case put by Sir William Grant, in *Bradley* v. *Westcott*, 13 Ves. 453, of a trust to a person indefinitely, with a superadded power to dispose by deed or will, which leaves the absolute property in the beneficiary. The words of the deed, construing them in their ordinary sense, fairly imply the power of disposition by deed, or "any writing under her hand," of any part of the property, at any time she saw proper. *Irwin* v. *Farrer*, 19 Ves. 86; *David* v. *Bridgman*, 2 Yerg. 557; *Johnson* v. *Johnson*, Tenn. Sup. Ct., January term, 1876; *Heathy* v. *Thomas*, 15 Ves. 576; *London Chartered Bank* v. *Lempriere*, Law Rep. 4 P. C. 572. And so they have been, from the first, construed by the parties.

The deed of settlement contains no provision for the reinvestment or other disposition of the proceeds of sales thus made. The trustee is, probably, bound to see that the funds thus derived are properly appropriated. But the bill states, and the answer admits, that the sales made were

"indispensable to the support of" the beneficiary and her children, "she having no other source of revenue." In this view there is no question raised that the proceeds of sales have been otherwise than properly applied. The property is absolutely the property of the beneficiary, and she has not, by her deed, restricted her right to use the proceeds of sale if she sees proper to do so. I am not aware of any principle which prevents her from so using them, or which implicates the trustee in any breach of duty if in fact she has used them, and the necessity actually existed.

The weight of our own cases, and of the American authorities, is that the purchasers in a case like the present are not bound to see to the application of the purchase money. *Williams* v. *Otey*, 8 Humph. 563; *Cardwell* v. *Cheathem*, 2 Head, 14; *Loughmiller* v. *Harris*, 2 Heisk. 553; 3 Red. on Wills, 235; Lewis on Trusts, 352; Perry on Trusts, § 797. And, besides, if the necessity exists, as admitted in the pleadings, for the use of the proceeds of sale by the beneficiary, and she did use them, there has been a proper application of the purchase money.

I am clearly of opinion, therefore, that the sales heretofore made under the deed of settlement and prior thereto, by the defendant Rachel D., when a widow, are valid, and that the trustee and beneficiary are empowered to make such sales whenever she may see proper to direct the same in the mode designated. And a decree may be drawn up accordingly.